# Johnson & a. *vs.* Cushing, Exr.

Where one has a general power of appointment over property, which he actually exercises, either by deed or will, he thereby subjects the property to the claims of his creditors, in preference to the claims of his appointee.

But a court of equity will not interfere unless the party upon whom the power has been conferred, or to whom it is tendered, has done some act indicating an intention to execute it. And the power of appointment must be a general power.

A power of appointment is general, or not, within the meaning of the rule, according to the persons or uses to which the property may be appointed under it, and not according to the time when its exercise takes effect in possession, or the instrument by which its exercise is to be manifested.

If a party may by will or deed dispose of property, to whom, and for such uses as he pleases, to take effect at his death, and may thus apply it to the payment of his debts, or direct any other disposition to be made of it, he has as great a power of disposal as he has of his own estate to take effect at the same time; and having undertaken to exercise the authority, it may well be treated as a part of his estate, upon his decease, so far as to require that he should first provide for his debts out of it; and if he fails so to do, equity may apply it as part of his estate, so far as it is necessary for that purpose.

Johnson *v.* Cushing.

J. S., by a codicil added to a will, in which he had given one third of his estate to his son T., so far altered the original will as to give that third to his executors, in trust to appropriate and pay over such part of the net income, at such times and in such manner as they should judge proper, for the maintenance of said T., and, after his decease, to make over such third part, together with any accumulated rents then in their possession, to the use and benefit of such person or persons as T. should limit and appoint by his last will, or other writing by him signed and sealed for that purpose, in such parts or parcels, and with such lawful restrictions, conditions and limitations as T. should thereby direct; and, in default of such appointment, then to the use of the heirs at law of T. The trustees under the will and codicil applied so much of the income as was necessary to the support of T. during his life. T., having made a will, (in which, after appointing the property to be applied to the payment of certain specified debts, he gave the residue to certain appointees,) died, leaving but little property, and his estate was settled in the probate court as insolvent.—*Held*, that this court has jurisdiction of the case above stated, on a bill in equity, filed by creditors of T. as in a case of trust.—*Held*, also, that T., having by his will undertaken to exercise a power which authorized him to appropriate the property to the payment of his creditors, without making provision for them, had committed a fraud upon them; and that upon a bill filed by creditors, they were entitled to have the fund in the hands of the executors of J. S. applied to the payment of their debts.

The provision in the will of J. S., that in default of an appointment by T., the property should go to the use of the heirs of T., would not have authorized the creditors of T. to interfere with it, had he declined to exert his power over it. His heirs would have taken as legatees under the will of J. S.

In Equity. The bill was filed by the plaintiffs, creditors of Theodore Sheafe, late of Portsmouth, deceased, in behalf of themselves and all others, the creditors of said Theodore, who should come into court and seek relief by, and contribute to, the expenses of the suit.

It alleged that Jacob Sheafe, late of Portsmouth, deceased, being possessed of a large estate, real and personal, on the second day of November, A. D. 1826, made and published, in due form of law, his last will and testament, by which, after giving to each of his ten children five dollars, and after devising to his wife, Mary Sheafe, all his farm in Rye, to hold during her life, &c., and after devising certain real estate unto his seven children, and to the heirs of their bodies in fee tail; he gave, devised and bequeathed one third of all the residue of his estate, real and personal, including the reversion of his said farm at Rye, unto his son, the said Theodore Sheafe, his heirs and assigns forever, with

a certain provision, for the purpose of equalizing the shares of his ten children, so that the share of Theodore should be equal to one tenth part of his estate ; and in said will appointed his son Jacob, junior, his son-in-law, Charles Cushing, who is the defendant, and his son Edmund Q. to be executors ; that Jacob Sheafe afterwards, on the twenty-second day of September, A. D. 1828, made a codicil to his will, in due form of law, and therein revoked his legacy given to Theodore, and instead thereof devised the share of his estate so devised to Theodore to his executors, " in trust, to appropriate and pay over such part of the nét income, rents and profits thereof, at such times, and in such manner as said executors should judge proper, for the maintenance of his said son Theodore Sheafe, and after the decease of said Theodore, to pay said third part of the residue of his estate, or the proceeds thereof, and such surplus rents, income, issues or profits, as should have accumulated, and should then remain in the hands or possession of said executors, to the use and benefit of such person or persons as his said son Theodore should limit and appoint by his last will, or other writing by him signed and sealed for that purpose ; in such parts or parcels, for such estates, and with such lawful restrictions, conditions and limitations, as said Theodore should thereby direct ; and, in default of such appointment, then to the use of the heirs at law of said Theodore ; and the same should be paid, assigned and delivered over accordingly." And said codicil farther authorized his executors, or the survivor or survivors of them, or any two of them, at their discretion, to sell and convey, in fee simple, any or all of said third part devised to them as aforesaid in trust for Theodore, and to invest the proceeds thereof in such manner as they might judge most beneficial for the trust and purpose aforesaid ; and subjected the third part so devised to the executors in trust, to like provision for equalizing the shares of all his children.

The bill then set forth that Jacob Sheafe died on or about the first day of March, A. D. 1829, without having altered his said last will and testament, leaving a large estate, real and personal, namely, to the amount of sixty thousand dollars, and leaving his son Theodore, and other his children still living ; that the executors named in the will caused it to be duly proved, and Cushing

and E. Q. Sheafe took out letters testamentary thereon, on the seventeenth day of March, A. D. 1829, and took upon themselves the execution thereof; that said Cushing and E. Q. Sheafe accepted the trust aforesaid in behalf of Theodore; and that, in their capacity as trustees, they received a large amount of property, both real and personal, being one tenth part of the estate of Jacob Sheafe, over and above the amount by them expended for the support of Theodore, &c.

The bill then stated that Theodore Sheafe, in the month of June, A. D. 1839, "in writing, under his hand and seal, made his last will and testament, in due form, and therein appointed and gave so much of the property, bequeathed as aforesaid in trust to his use, to be sold by his executors therein named, as would pay a note at the Rockingham bank, amounting to about one thousand three hundred dollars, with interest, signed by said Theodore as principal, and Charles Cushing and Edmund Q. Sheafe as sureties; and also to pay to Theodore Sheafe Cushing two hundred dollars, and Mrs. Theodore Harris two hundred dollars, for the education of her son Theodore Sheafe Harris;" that all the remainder of his property he appointed, gave and devised to Mrs. Mary Adeline Watson, and Ann Prescott, one half each, with a reservation of a home for his sister Hannah Prescott, and his brother Daniel R. Sheafe, during their lives, upon the farm therein mentioned; and appointed Charles Cushing and Edmund Q. Sheafe aforesaid to be his executors of his said will; that said Theodore died in foreign parts sometime A. D. 1839, in the month of September, as the plaintiffs believe, and that E. Q. Sheafe, having deceased before that time, on the twelfth day of May, A. D. 1840, Cushing caused the will to be duly proved, and took out letters testamentary thereon.

It stated farther, that Theodore Sheafe, at the time of his decease, was possessed of and left very little property, and not enough, or very little more than enough, to pay the expenses of administration upon his estate, besides that bequeathed by said Jacob Sheafe to his executors in trust for him as aforesaid; that his estate was represented as insolvent, and decreed to be administered as an insolvent estate, &c.; that he was at the time of

his decease indebted to the plaintiffs in various sums; that they presented their several claims to the commissioner, which were allowed, &c.; that the defendant wholly refuses and declines to account for the property of said Theodore, or to pay any part of the debts or claims of the plaintiffs, &c.

The bill then prayed that an account might be taken of the moneys due to the plaintiffs from the estate of Theodore, and of the other debts owing by him at the time of his decease, according to the report of the commissioner of insolvency upon said estate; that an account might be taken of the property devised as aforesaid by said Jacob to said trustees in behalf of Theodore, and of all the income, rents and profits thereof, and that the same may be decreed to be assets of said Theodore, and appropriated for the payment of the claims of the plaintiffs upon the estate of said Theodore, and of all others his creditors who should become parties, &c.; and that the plaintiffs might have such farther relief as the nature of their case might require, and as might be agreeable to equity.

The defendant filed a demurrer.

*Hatch*, for the plaintiffs. We apply under the statute of 1832, giving the court chancery jurisdiction, and the Revised Statutes, which give the court power to administer trusts.

We say the trust has not been properly applied according to law, and the administration of trusts is properly within the jurisdiction of a court of equity. 23 *Pick.* 148, 153, *First Cong. Soc. in Raynham* vs. *Trustees.*

We pray for a discovery also. It is a case of mistake, or accident. Theodore Sheafe failed to provide for his creditors. 1 *Story's Eq.* 181.

His execution of the power with which he was entrusted was defective, in making no provision for his creditors.

This was a trust for the benefit of Theodore Sheafe. It is so given, that at common law the creditors could not get at it. It is only in equity that it can be reached. 8 *Cowen* 543, *Sinclair* vs. *Jackson.*

Theodore Sheafe had an interest during his life. It was to go

to his heirs, if he did not dispose of it. He did make a disposition of it, and this subjects it to his debts. 2 *Vern.* 319, *Thompson* vs. *Towne; Ditto* 465, *Lassells* vs. *Cornwallis; Ditto* 287, *Ashfield* vs. *Ashfield;* 1 *Atk. R.* 465, *Hinton* vs. *Toye;* 3 *Atk.* 269, *Pack* vs. *Bathurst; Ditto* 656, *Troughton* vs. *Troughton;* 4 *Ves.* 86, *Holford* vs. *Wood;* 2 *Ves. sen.* 1, *Townshend* vs. *Windham,* cited *Chitty's Eq. Dig.* 830 ; 7 *Ves.* 499, *Holmes* vs. *Coghill;* 12 *Ves.* 206, *S. C. on appeal;* 7 *Ves.* 503, *note, Bainton* vs. *Ward;* 2 *Atk.* 172, *S. C.;* 9 *Ves.* 189, *George* vs. *Milbanke;* 17 *Ves.* 388, *Thorpe* vs. *Goodall;* 2 *H. Black.* 136, *Buckland* vs. *Barton ;* 1 *Tamlyn R.* 393, *Greene* vs. *Spicer ;* 5 *Cond. Eng. Ch.* 448 ; 2 *Sugden on Powers* 29 ; 1 *Madd. Ch. R.* 495, *Attorney Gen.* vs. *Christ's Hospital; Ram on Assets* 149.

In 1 *Story's Eq.* 188, this is laid down as the established doctrine of equity, and in note 4 he doubts the propriety of making a distinction, if the party does or does not exercise the power. The doctrine is stated also in 4 *Kent's Com.* 339.

A man's property is subject to the payment of his debts, and he cannot give away his property, by will, to the prejudice of his creditors.

This was the property of Theodore Sheafe. It was given to trustees, to pay over such part as might be necessary for his support. He had nearly an absolute property in it. He had power, in his life, to appoint what should be done with all of it after his decease. It was so far his property as to bring it within all the cases cited. He had a power coupled with an interest. 3 *Atk.* 714, *Hearle* vs. *Greenbank.* Having an interest, that interest was subject to the payment of his debts. In cases similar to this, courts have holden that the absolute property was in the person having the power. 16 *Ves.* 135, *Barford* vs. *Street;* 1 *Simons & Stewart* 248; 3 *Ves.* 299, *Hales* vs. *Margerum ; Sug. on Powers* 127.

Here was a general power of appointment. *Sug.* 495. Theodore Sheafe had power to convey to whomsoever he pleased. If Jacob Sheafe had given Theodore a power to give it to some particular individual, it would have presented a very different case.

*E. Cutts,* (with whom was *James Bell,*) for the defendant. The demurrer admits the facts, but not the conclusions or inferences drawn from them.

If the complainants are not entitled to relief, they are not entitled to discovery. *Cooper's Pl.* 116.

Jacob Sheafe was the owner of the property. Theodore had no interest, and no claims except what might arise from the bounty of his father. He had no estate in this tenth part. He had a mere power of appointment.

The word ' estate,' in the statute, where it is provided that the estate of a deceased person shall be applied to the payment of his debts, means legal estate. Creditors of a deceased person have no right to an estate which did not belong to him.

An appointee, under a power, does not derive from the person making the appointment, but under the original conveyance. 4 *Cruise's Dig.* 282, *ch.* 16, § 62, 65; 6 *East* 289, *Roach* vs. *Wadhum; Powell on Dev.* 163; *Watson on Descents* 159; 2 *Fearne* 347; 2 *Atk.* 650, *Middleton* vs. *Crofts.*

The English cases hold that if no appointment be made, or attempted to be made, creditors have no right.

The appointer must have an absolute power to make such appointment as he pleases. He must have a power to appoint to himself, in his own lifetime. So are cases on the other side. 1 *Story's Eq.* 188, *note.* See, also, 1 *Cox* 131, *Harrington* vs. *Harte.*

All the cases referred to on the other side are referred to in *Jeremy on Equity Jurisdiction* 377; and in 1 *Story's Eq.* 188; 1 *Madd. Ch.* 484; 4 *Kent* 333, *et seq.*

By the phrase, " general power," is meant to include a power to appoint in any manner. If the party cannot appoint in his own favor, creditors have no claim upon the property.

Theodore Sheafe was limited as to the mode, as well as to time. He could convey only by will, or by writing under seal in nature of a will. The power, therefore, was not a general power. 3 *East* 440, *Hawkins* vs. *Kemp; Sugden on Powers* 260, *et seq.,* and *p.* 131; 4 *Cruise's Dig.* 246.

The will of Jacob Sheafe gives no authority to Theodore to execute the power in his lifetime, or for his own benefit.

Johnson *v.* Cushing.

It is inequitable that the attempt to execute the power should defeat the very intention of Jacob, as set forth in the codicil. Our positions are,—

1. This was not such an estate as the statute intended.

2. Theodore Sheafe had no general power of appointment, such as existed in the cases cited. His authority was limited. He could not exercise the power but under will, or writing under seal. He could not apply it to himself.

3. There was an apparent revolution in the mind of Jacob Sheafe, between the time of making his will and the time of making the codicil. The intention of the testator is to be followed, and this was, that the property should not go to Theodore, or be subject to debts. There was no power to raise money for the use of the *cestui que trust.*

*Bartlett,* in reply. It is for the very reason that the property cannot be reached by the ordinary process of law, that we apply to the equity powers of this court.

The statute conferring the equity powers does not define the extent of them. We are referred back to England, and the inquiry is, what powers the court there exercises.

The majority of cases sustain the plaintiff's case. Where the party appoints to his children and friends, he appoints to his own use. It is not honest that the relations of Theodore should take the property through him, or his act, and the creditors be defeated. There was an accumulating fund to be disposed of by him. It is not true that the executors could have refused to pay to the support of Theodore.

It is no more unjust that the estate of Jacob Sheafe should go to the payment of Theodore's debts, than that it should go to the satisfaction of Theodore's donations.

Whether there were good reasons for the court of chancery to hold that they could not apply the property to the payment of debts, where the party did not attempt to exercise the power of appointment, and could do so where he did, is now immaterial. Whatever might be the reason, originally, it is now settled, and the plaintiffs are entitled under the rule.

PARKER, C. J.  Here is undoubtedly a trust in the hands of the defendants.  And the statute conferring chancery powers upon this court gives us power expressly in cases of trusts.  The jurisdiction to enforce and apply the trust, in favor of those legally entitled to the benefit of it, seems to be clear, and is not denied by the defendants.  9 *N. H. Rep.* 309, *Parsons* vs. *Parsons.*

If the creditors are entitled to relief, according to the prayer of the bill, the attempt to dispose of the property, without providing for their payment, may also be treated as a fraudulent execution of the power vested in Theodore Sheafe, (he having undertaken to execute it,) against which this court should grant relief under its equitable jurisdiction in cases of fraud.  2 *Ves. sen.* 11.

The bill sets forth that the plaintiffs are creditors of Theodore Sheafe, deceased ; that Jacob Sheafe, the father of Theodore, made a will, by which he gave one tenth of his estate to Theodore ; that by a codicil he subsequently altered the disposition of that part of his estate, and directed it to be placed in the hands of "his executors, in trust, to appropriate and pay over such part of the net income, rents and profits thereof, at such times, and in such manner, as said executors should judge proper, for the maintenance of his said son Theodore Sheafe, and, after the decease of said Theodore, to pay said third part of the residue of his estate, or the proceeds thereof, and such surplus rents, income, issues or profits, as should have accumulated, and should then remain in the hands or possession of said executors, to the use and benefit of such person or persons as his said son Theodore should limit and appoint by his last will, or other writing by him signed and sealed for that purpose, in such parts or parcels, for such estates, and with such lawful restrictions, conditions and limitations as said Theodore should thereby direct, and in default of such appointment, then to the use of the heirs at law of said Theodore : and that the same should be paid, assigned and delivered over accordingly ;" that the defendant is surviving executor, and has the fund ; that the executors applied so much of the income as was necessary to the support of Theodore Sheafe during his life ; that Theodore Sheafe undertook to exercise the

power given him in the will of Jacob, and by his will made a disposition of the property remaining, directing part to be applied to the payment of certain specified debts, and the remainder to be distributed among certain persons named, making no provision for the debts due the plaintiffs.

The demurrer admits the facts set forth.

The question is, whether the plaintiffs are entitled to have the trust funds applied, so far as may be necessary, to the payment of their debts.

It appears to be a well settled principle, in equity, that where a person has a general power of appointment over property, and he actually exercises his power, whether by deed or will, the property appointed shall form part of his assets, and be subject to the claims of creditors, in preference to the claims of the appointee. 4 *Kent's Com.* 333, (5 *Ed.* 339.) The principle has been impugned in some cases, and doubts expressed whether its original introduction into the equity jurisprudence was well warranted; but its existence, as a part of the system of equity as administered in England for a long period, is not denied. 2 *Vern.* 465, *Lassells* vs. *Cornwallis*; 2 *Ves. sen.* 1, *Townshend* vs. *Windham*, and *Shirley* vs. *Lord Ferrers*, there cited; 1 *Atk. R.* 466, *Hinton* vs. *Toye*; 2 *Atk. R.* 172, *Bainton* vs. *Ward*; 3 *Atk.* 269, *Pack* vs. *Bathurst*; Ditto 656, *Troughton* vs. *Troughton*; Ditto 697, *Hearle* vs. *Greenbank*; 17 *Ves.* 388, *Thorpe* vs. *Goodall*; 16 *Ves.* 135, *Barford* vs. *Street*. And we see no reason to gainsay the soundness and justice of it as above stated. Where the owner of property, who has the right to dispose of it in such manner and under such limitations as he pleases, confers upon another the general power of making such disposition of it as *he* pleases, or, in other words, invests him with all the attributes of ownership over it, and that other accepts the power thus tendered to him, and undertakes to exercise dominion over the subject matter, as if he was an owner; the original proprietor, having authorized the other to treat it as if it was the property of the latter, by exercising all the power over it which he could exert if it were actually his property; and he having undertaken to treat it as if it was his property, by making a disposition of it

under such a power; a court of equity may well do what the parties have done, that is, treat it as the property of the appointer, and make it subject to the incidents attending such property. The court in such case do no more than to treat it as the property of the party, who, by the express authority of the owner, has the power and right to treat it as if it were his property, and who undertakes so to do.

The court does not interfere unless the party upon whom the power has been conferred, or to whom it is tendered, has executed it, or done some act indicating an intention to execute it. This is also settled. 7 *Ves. R.* 499, 508, *Holmes* vs. *Coghill;* 12 *Ves.* 214, *S. C. on appeal.*

It has been said that this distinction is a nice one, and not very satisfactory. " Why," it is remarked, " when the party executes a power in favor of others, and not of himself, a court of equity should defeat his intention, though within the scope of the power, and should execute something beside that intention, and contrary to it, is not very intelligible." 1 *Story's Eq.* 188, *note;* 7 *Ves.* 499; 12 *Ves.* 214. But the reasons, as it seems to us, may be well explained, upon the principle before suggested. The subject matter upon which the power is to act cannot be treated as the property of the party having the power to appoint, until he, by his appointment, acts as if it were his property. Where the owner, by some instrument, authorizes another to raise a sum out of an estate, or by way of charge upon an estate, and to dispose of it to such uses as he may appoint, nothing exists in the nature of property, in him, or which can be treated as such, until he assents to what has thus been done, by an exercise of the right. Authorizing a party to create a charge upon an estate, if he pleases, does not of itself create one, nor give him any interest in it. But when he assents and creates the charge, within the terms of the power; if the power be general, he has, by the authority of the owner, exercised all the power over the estate, to that extent that an owner could do. There is, then, in existence a fund over which he rightfully claims and exercises dominion, and equity interferes, and holds that this exercise of dominion is subject to the ordinary incidents of an exercise of dominion over

property, so far that it cannot be given away to the prejudice of creditors. ·

In several of the cases cited, the fund, or property, which the creditors sought to appropriate in satisfaction of their debts, was created only by the execution of the power, but the same principle is applied where the fund or property upon which the power is to act is already set apart and in existence.

But, in order to the application of the principle, the power must be a general power, as it is termed, and it is denied in this case that the power of Theodore Sheafe was such a power. This brings us to the question, what is to be understood by " a general power."

From some of the cases it might be inferred that a general power, within the meaning of the rule, existed only in cases where the party having the right to exercise the power, might, at any time after it was conferred, and in any mode, make an appointment for his own use and benefit. Such a construction is, in effect, contended for in this case, as it is objected, not only that Theodore Sheafe could not appoint to his own use, in his lifetime, but that he was restricted to a particular mode of executing it, to wit, by deed or will.

The authorities, however, which have been cited on the last branch of the defence do not seem to sustain the objection. The power may be general in its uses, purposes, objects and effects, notwithstanding it is required to be exercised in a particular way, as will appear from the authorities hereafter cited. Thus an attorney is said to have a general power to convey the lands of his principal, notwithstanding the law requires, in order to a valid conveyance, that it should be by deed.

More reliance seems to be placed upon the other position, that Theodore Sheafe had not a general power, because he could not appoint to his own use, or the use of any one to take effect in his lifetime. And there is, in the language of some of the books, matter having a tendency to support this ground of the defence. Thus in *Jeremy's Equity Jurisdiction* 377, it is said, " But it is still to be remembered that the power of appointment must be general, or such as he may execute for any purpose whatever, for

if the power be limited in any such manner that he cannot by execution procure the benefit to himself, there is no pretence for his creditors to claim it." For the support of this position, reference is there made to 2 *Vesey, sen.* 10, which is the case of *Ld. Townshend* vs. *Windham.* Other books hold a language somewhat similar.

The language of Lord Chancellor *Hardwicke,* in the case cited by *Jeremy,* if taken disconnected from the facts to which it refers, would undoubtedly appear to sustain the principle asserted. He refers to *Shirley* vs. *Lord Ferrers,* and other cases, " which have established the doctrine, that where there is a general power of appointment of a sum of money to charge the estate of a third person, which it is absolutely in his pleasure to execute or not, he may do it for any purpose whatever, and appoint the money to be paid to himself or his executors, if he pleases." And he then proceeds to say, " If he executes it voluntarily, without consideration, for the benefit of a third person, this shall be considered as a part of his assets, and his creditors have the benefit of it. Nor does it differ, whether it is a power to charge a sum of money on land, or to create a chattel interest out of land; for it will depend upon the same foundation, provided it is a general power, which he may execute for any purpose; for if it is a power to appoint a sum among other persons who are at all described by the power, so that it is not absolutely in his power to do it for himself, there is no pretence that his creditors could have the benefit of it." 2 *Vesey, sen.* 10.

But it is perfectly evident, on adverting to the facts of the case, that the Lord Chancellor was then considering the distinction between a power where the persons or objects, in whose behalf, or for whose benefit the appointment was to be made, were, to some extent, limited or restricted, and one where there was no limitation in this particular. If the party having the authority is restricted as to the objects in whose favor the appointment is to be made, it is very clear that the power is not a general one within the rule, for in that case he has not the right to act as if he was the owner. The restraint precludes him from treating the subject matter as if it was his property, at any time.

The facts of that case, and the decision upon them, show conclusively that Lord *Hardwicke* is not to be understood as asserting that it is necessary, in order to constitute a general power within the meaning of the rule, that the appointer should have the right to reduce the subject matter into his own possession, or the right to appoint, so that he may take a beneficial use of it himself in his lifetime.

The bill was by the creditors of Joseph Windham Ash, the testator, to have an account and satisfaction out of his assets. He was entitled to a large estate for life, remainder to his sons successively in tail, remainder to his nephew, William Windham, in tail, with limitations over. Having no sons, the testator executed an indenture of demise, in 1734, and thereby, in performance it was said of certain promises made before the marriage of his nephew William, let him have possession, immediately, of part of his estate, without paying anything for it; but William covenanted that if, *by the testator's death without issue male,* it should happen that William, or any heirs of his body, should come into possession of this estate, he would permit such person as the testator should, by *deed* or *will,* in his lifetime, appoint for that purpose, to enter and receive the rents and profits of the estate, for as long a time as William should enjoy it in the testator's life. In 1742, the testator, by deed, directs all and singular the lands, &c. and all his estate, title, right, and interest, to V. Comyns, his heirs, &c. to take the profits thereof, *from and immediately after the death of the testator,* in trust nevertheless, to and for the sole and separate use of his daughter Catherine, her heirs, &c. ; and died in 1746.

" The question was, whether this twelve years' interest in William's estate was part of the assets of the testator, or a good appointment to the daughter."

It is apparent, from the statement of that case, that the testator had no power of appointment, by the exercise of which he could take anything to his own use in his lifetime, for the exercise of the power was, by the terms of it, to become operative only after his decease. There was no attempt to support the bill upon any property, or right of the testator, prior to the de-

mise, or to subject the property to the creditors upon any other ground than the right of the testator under the power of appointment. It was argued, for the plaintiffs, that this was part of his personal assets; that a general power was so considered in that court, if executed without a valuable consideration, (let it be to whatever persons or uses,) because it is that over which he has an absolute property, and shall not therefore give away from his creditors after his death; that if the power was to limit only to particular persons or uses, that, when exercised, is not assets, because to a particular use, &c.; that no power could be more general than the one then in question, as to persons and uses; that the testator might have sold or mortgaged this property, though he could not actually enjoy it in his life; and that, if there was no appointment, it would have gone to the general assignees at law of the testator, the old ownership resulting. *Lassells* vs. *Lord Cornwallis*, 2 *Vern.* 465; *Pre. Chan.* 232, *Shirley* vs. *Lord Ferrers;* and *Bainton* vs. *Ward,* were cited.

For the daughter, it was urged that this being to arise on a contingency after the testator's death, there were no words in the conveyance reserving the estate to him, nor of covenant to his executors, but merely to such as he shall appoint, which alone made it different from the cases cited, *and that if there was no appointment, it could not devolve on his personal representatives.*

Lord *Hardwicke* said it was insisted for the plaintiffs, that this is such a kind of interest granted as the testator would be entitled to the benefit of, although he had made no particular appointment; but, on consideration, he was of opinion that *without making a particular appointment, neither the testator nor any in his place could have the benefit of this covenant;* that no action of covenant could have been maintained by the executors of the testator, upon the deed, until he made an appointment; that when the testator came to execute the power, and nominate an appointee, then it became complete, and operated as a grant of the land, for that chattel interest, to take effect out of his remainder in tail, from that time; that the meaning was to leave it in the uncle's power, or option, to make use of it or not; and that the next consideration was, supposing *this was not such an interest as*

*could take effect until the power was executed, and that without particular appointment the executors of the testator could have no benefit,* whether this differs from the other cases on the execution of general powers, when executed by the party, as *Shirley* vs. *Ld. Ferrers,* and others.    And then follow the remarks first cited. He is reported to have said, subsequently, in the same case, " Here the testator had a power to appoint the benefit of the covenant, or in the other light this chattel interest in the land, to take effect out of the remainder in tail, generally to any person, or to take it to himself; he appoints it not to himself, but merely voluntarily to a daughter, to take effect after his death, as it could not be otherwise ; in respect of his creditors it must be considered as part of his estate at the time of his death ; he having executed so as to gain the interest to himself and attempted to pass it at the same time to his daughter, the court will not suffer it, saying he has been guilty of a fraud as to them, being indebted at the time." Perhaps there may be some error in the language of this part of the report, as it is clear, not only from the statement of the case, but from other parts of the opinion, that there was nothing that the testator could take to himself, into his own possession, in his lifetime, or that any one could take through him, except upon his appointment, to take effect after his decease. If the language quoted was used, Lord *Hardwicke* by the words, " take it to himself," could only have intended that he might appoint it to such use after his decease as he should by some other instrument direct, which would not affect the principle of the case.

The decision was in favor of the creditors, and the case is therefore a direct authority against the objection urged in behalf of the defendant, for the reason before stated, that it shows that it is not essential, in order to constitute a general power, that the party should have the right to make a disposition which will take effect immediately, or even one through which he may receive anything to his own use, in his lifetime.

A power, then, is general or not, within the meaning of the rule, according to the persons or uses to which the property may be appointed under it, and not according to the time when its

exercise takes effect in possession, or the instrument by which its exercise is to be manifested.

We are satisfied that if the principle is once admitted, it must lead to this result. To hold that creditors should come in, where the party had a power to dispose of the estate to whom he pleased, taking effect in his lifetime, and that they were shut out if the power extended only to dispose of the estate as he pleased, taking effect at his decease, would be making a distinction without any sound difference, and we should come to such a conclusion only, upon finding that we were thus limited by the authorities. If a party may by will or deed dispose of property to whom and for such uses as he pleases, to take effect at his death, and may thus apply it to the payment of his debts, or direct any other disposition to be made of it, he has as great a power of disposal as he has over his own estate, to take effect at the same time; and having undertaken to exercise the authority, it may well be treated as a part of his estate, upon his decease, so far as to require that he should first provide for his debts out of it; and if he fails so to do, equity may apply it as a part of his estate, so far as it is necessary for that purpose. Undertaking to exercise a power, which authorized him to appropriate the property to the payment of his creditors by a mere gift or legacy, without making provision for them, is a fraud upon them. It is no answer to this to say, that the property is a part of the estate of Jacob Sheafe, and that Theodore Sheafe had merely a right to designate what disposition should be made of it upon his decease. That unlimited right of disposition, with the act of Theodore in exercise of it, makes it part of his estate.

It but serves to confirm this view of the matter, in this particular case, that, by the will of Jacob Sheafe, if Theodore failed to act upon his power of appointment, the property was to be distributed, on the decease of Theodore, among Theodore's heirs at law. That, however, would not have authorized the creditors to interfere with it, had Theodore declined to exert his power over it, as it would then have passed to his heirs by the will of Jacob Sheafe alone, and they would have taken as legatees under the will.

If, on account of the phraseology to which we have adverted, in the case *Lord Townshend* vs. *Windham*, any farther authority is desirable in support of the principle which we have deduced from that case, relative to the construction of the term, " general power," it may be found in *Jenney & a.* vs. *Andrews & a.*, 6 *Maddock's Ch. R.* 264, in which it was held, that where a party, having a power of appointment over money, to be executed only by will, made his will, disposing of the property, and then became bankrupt, and afterwards obtained his certificate, and died without revoking his will, the appointee by the will was a trustee for the creditors of the bankrupt, who became such after he had obtained his certificate.

The facts of the case were, that by a settlement in April, 1808, made previously to the marriage of Henry Humphries, and Jane his wife, a moiety of £5999 12s. 9d. three per cents, became vested in trusts, for such uses (if there should be no children of the marriage,) as Henry Humphries should by his last will and testament in writing, or any writing in the nature of a will, or any codicil or codicils executed by him in the presence of and attested by two or more credible witnesses, direct, limit, or appoint, and for want of such direction, limitation and appointment, in trust, for the plaintiff Jane Humphries, her executors and administrators. Henry Humphries being indebted to the plaintiff, Edward Jenney, in the sum of £4500, assigned or appointed his interest to Jenney, by indenture, 21st August, 1815, as a security for the debt. On the 15th November, 1815, a commission of bankruptcy issued against Henry Humphries ; the defendants, Taddy and Tullock and Newman were chosen assignees ; and Andrews and the plaintiff Jenney, the trustees under the settlement ; proved a debt under the commission, on account of a bond given to them by the bankrupt, for securing a sum of money, as part of the trust funds of the marriage settlement ; and received a dividend which was added to the trust property, a moiety of which the bankrupt had power to appoint by his will.

Henry Humphries, in order more effectually to secure Jenney, on the 29th August, 1815, made his will in the presence of two witnesses, and thereby appointed his interest in the trust moneys

to Jenney, his executors, administrators and assigns, in trust, to raise the said sum of £4500, and interest, and subject thereto, in trust for the plaintiff Jane Humphries.

Henry Humphries died on the 10th May, 1820, without issue, having previously obtained his certificate, and Jane Humphries, the plaintiff, proved the will. The plaintiff, Jane Humphries, claimed the absolute interest in the money, and the prayer of the bill was accordingly. On the other hand, the assignees of Humphries, the husband, claimed the money.

The counsel for the plaintiffs contended that the bankrupt had a power of disposal only by will, and that the property appointed could not, therefore, be assets till after his death. But as the bankrupt obtained his certificate, this property, acquired subsequently, could not pass to the assignees.

The vice chancellor said, " where there is a general power of appointment by will, and an appointment is made, the appointee is a trustee for creditors ; but it is not for creditors at the time of the execution of the will, but at the death of the testator. The certificate of the bankrupt deprives the assignees of all claims for the benefit of the creditors under the commission."

The power of appointment in the above case could be exercised by will only, which of course could not take effect until after the decease of the party appointing; but no doubt is expressed on that account, and it was regarded as a general power.

And in *Townshend* vs. *Windham,* the power was to be executed, as in this case, by deed or will. See, also, 1 *P. Wms.* 149, 171, *Tomlinson* vs. *Dighton ;* 1 *Tamlyn* 396, *Green* vs. *Spicer.*

Upon these authorities we are of opinion that the power given to Theodore Sheafe was a general power, within the meaning of the rule. It enabled him to treat the subject matter of it as his property, at his decease. He assumed in virtue of the power to make a disposition of it, to take effect at that time, as if he had the ownership, and the court must thereupon treat it as if it was his property, so far as to subject it to the discharge of his debts.

*Demurrer overruled.*

*Leave to file an answer.*