SAMUEL W. TALLMADGE *vs.* HORACE L. SILL and WILLIAM A. WOODWARD, trustees and executors of John L. Sill, deceased, ROXANA FRAZER and others.

A testator, by his will executed previous to the revised statutes, devised certain land to trustees, in trust, 1. To pay the rents and profits to the sole and separate use of A. L. S. the wife of J. L. S., during the joint lives of the said J. and A.; 2. If J. L. S. should survive A., then to pay the rents and profits to J. L. S. during his lifetime, to be applied by him to the maintenance, education and support of his child or children lawfully begotten. 3. If J. L. S. should survive such child or children, the said rents and profits to be paid to him. 4. The trustees, at any time, to cut down any timber or wood on the land, and sell it, and pay the proceeds to J. L. S. 5. J. L. S. was empowered and authorized

Tallmadge *v.* Sill.

*to convey and dispose*, by his last will and testament, of all the said land, or any part thereof, and to limit and appoint the uses thereof *in such manner as he might deem proper.* In case J. L. S. should die, without having made such last will and appointment, then the testator gave and devised the said land to the issue of J. L. S. living at the time of his death. J. L. S. during his lifetime conveyed several parcels of the land to different grantees. He survived the only children he had, and died without issue; having previously made his will, by which he gave and devised the portion of the land not previously conveyed by him, *to his executors and trustees, in trust for the benefit of the previous purchasers, and others.*

*Held* that the power given by the original testator, to J. L. S. to dispose of the land in fee, by will, was a general power, of which J. L. S. might have the exclusive benefit, and that, having exercised it, his interest in the property was to be deemed assets, upon which judgments recovered against him were equitable liens. And that the judgment creditors were equitably entitled to payment out of the land, in preference to the voluntary donees and devisees of J. L. S.

*Held also*, that it was not necessary that an action brought to enforce such an equitable lien should be prosecuted for the benefit of all the creditors of J. L. S.; but that the judgment creditor who first commenced his action would obtain a priority in relation to the assets sought to be reached.

*Held further*, that the claim of the plaintiff, in such an action, need not be made against all the land affected by the power, but might be restricted to that portion of the premises which had not been conveyed by J. L. S. previous to the making of his will.

*A* decree was entered, declaring the plaintiff's judgment and decree liens on the land not sold and conveyed by J. L. S. in his lifetime, and directing the sheriff to sell the same to satisfy such liens, in the same manner, and with the like notice, as on sales under executions.

MOTION for judgment upon a verdict taken for the defendants, subject to the opinion of the court, on a case. Francis Nicoll owned 844$\frac{61}{100}$ acres of land in Bethlehem and Coeymans; and on the 18th day of February, 1817, made his will, devising this land to two trustees, in *trust*, 1. To pay the rents and profits to the sole and separate use of Abigail L. Sill, wife of John L. Sill, during the joint lives of said John and Abigail. 2. If John L. should survive Abigail, then to pay said rents and profits to John L. during his lifetime, to be applied by him to the maintenance, education and support of his child or children lawfully begotten. 3. If John L. should survive such child or children, the said rents and profits to be paid to him. 4. The trustees, at any time during the continuance of the trust, to cut

down any timber or wood on the land, sell it, and pay the proceeds to John L. for his sole use.    5. John L. was by said will of Nicoll empowered and authorized " *to convey and dispose,* by his last will and testament, under his hand, executed in the presence of three witnesses, in due form of law, *of all the above mentioned real estate,* or any part thereof, and to limit and appoint the uses thereof, *in such manner as he might deem proper."*    And finally, if he died without having made such last will and testament and appointment, then Nicoll gave and devised the said real estate to John L.'s issue lawfully begotten, living at the time of his death, including any posthumous child, in fee.    Nicoll died, and the trustees named in his will, which was duly proved, assumed the execution of the trust.    John L. Sill, who never had but two children, nor any grandchild, survived both his children, and died without issue.    The dispositions from time to time made and attempted to be made of the 844$\frac{61}{100}$ acres of said trust land, were as follows : 1. On the 3d of March, 1840, the trustees under the will of Nicoll, together with John L. Sill and Abigail his wife, and Francis N. Sill, one of his two sons, united in a deed of conveyance, in fee, of all that part of the said trust lands lying in Coeymans, being 170 acres, to Richard Sill, the other son of said John L. Sill.    Richard, the grantee in this deed, on the 13th of November, 1841, executed a mortgage of the part conveyed to him, to secure the payment of a joint bond by himself and his father, for $8000. This land was sold under a foreclosure in chancery, and bid in by Erastus Corning, who subsequently sold and conveyed the same to the plaintiff.    2. A like conveyance in all respects, by the same parties, was made, August 26, 1842, also to Richard Sill, of 110 acres.    3. On the 5th June, 1848, both the original trustees having died, and new trustees with express power to sell having been appointed by the supreme court, the latter trustees, in pursuance of the order for their appointment, united with John L. Sill and his wife, (Francis N., his son, being then dead, and Richard, his remaining son, being one of the substituted trustees,) in a conveyance to John Soop, of 122 acres of land.    4. On the 24th of May, 1849, a like conveyance as that

Tallmadge *v.* Sill.

last mentioned was made by the same parties, to Cornelius V. Baker, of $95\frac{85}{100}$ acres of land. By which four several conveyances, the whole of the land devised in trust by Nicoll, had been conveyed in the lifetime of John L. Sill, by deeds in which the trustees and all parties beneficially interested united, except a piece of land containing $276\frac{3}{4}$ acres. Each of these four several conveyances contained covenants of *warranty* by John L. Sill, under whom all the parties to this suit claim ; three of them contained the following covenant by John L. Sill : " And the said John L. Sill, one of the said parties of the second part, hereby, as well by means of his being a party hereto as by his express declaration, covenants and agrees that he cannot and will not make any disposition of the premises hereby conveyed by any last will and testament, and that all his right, title and interest in the said premises hereby conveyed, and all his beneficiary interest in the said premises is forever extinguished, relinquished and ended ;" and that the last two of said conveyances embodied, or referred to and adopted, as part of the deed, an order of the supreme court ; "that after the execution and delivery of any one or more such deed or deeds, all and singular, the land and premises which should be conveyed by such deed or deeds, should be forever thereafter excepted from any lien or charge or disposition which might or could be made, created or given by any last will and testament of the said John L. Sill, and the said John L. Sill forever debarred from selling, conveying or devising or in any way affecting or incumbering the said premises so sold as aforesaid, or any part thereof."

On the 15th of May, 1852, when all the trust lands except the $276\frac{3}{4}$ acres in question in this cause, had been sold, conveyed and warranted as above mentioned, John L. Sill executed his will, in which he assumed to dispose of *the whole* of this land ; giving it in part to the previous purchasers, and in part to others. He devised the pieces which had been sold to John Soop and Cornelius V. Baker to them respectively. The farm of the plaintiff, purchased as above mentioned of Mr. Corning at private sale, the plaintiff's title to which had been about a month previously confirmed by an act of the legislature, the testator made

a present of to his, the testator's, wife. (*See Laws of* 1852, *ch.* 322.) He devised the piece of land which he had previously united in conveying to his son Richard, which was then owned by the widow of his deceased brother, Wm. N. Sill, to six females, subject to an annual payment to the testator's wife of $250. He devised the 276¾ acres in question, (which had not been sold,) to the defendants, Horace L. Sill and William A. Woodward, in trust, for the benefit of the other defendants in this cause. John L. Sill died November 26, 1852, leaving no other property of an amount more than sufficient to pay his funeral expenses. His trustees assumed the ownership of the land in question. The plaintiff, on the 3d of August, 1853, became the purchaser of a judgment and decree against John L. Sill, docketed respectively the 17th of February, 1845, and 20th of March, 1845, upon both of which there is due upwards of $9000, besides interest. He claimed that John L. Sill having had a beneficial interest in the 276¾ acres, during his lifetime, and the power by an instrument executed in his lifetime to dispose of this land absolutely and forever after his death, the same was property and assets out of which his judgment creditors were equitably entitled to payment, in preference to his voluntary donees and devisees. To enforce this claim, this suit was brought.

*S. W. Tallmadge,* plaintiff, in person. I. Under the will of Francis Nicoll, no person whomsoever had any right or interest in the land in question which extended a moment beyond the lifetime of John L. Sill, except only such person as he should appoint by authority of that will. (1.) The legal estate of the *trustees,* and all the trusts with which they were clothed, expired with the death of John L. Sill. (2.) "The issue lawfully begotten" of John L. Sill, to whom the land was given after his death, in a certain event, took nothing; 1st, because they were only to take in case he made no appointment, and he made one; 2dly, because he left no such issue. (3.) His *own* valuable interest in the land, to have the timber and wood cut down and sold for his benefit, of course expired at his death, or became

Tallmadge v. Sill.

merged in his absolute power of disposition of the whole estate by appointment. (4.) His *wife's* interest ceased at his death. While he lived she was to receive the income of the land; but there is not a word or intimation in Nicoll's will that Abigail L. Sill was to have any right or interest in the land after her husband's death. None can be inferred from relationship, for she was not related to him.

II. Under the will of Nicoll, John L. Sill had, in his lifetime, "power and authority to convey and *dispose* of" the land in question to any person, conveying to such person the entire estate in fee simple in perpetuity, to commence at the time of his death. In other words, he had the same power over this land, to take effect after his death, that any absolute owner has over his own lands—nothing less, nor in any respect different.

III. Consequently he had in this land (at least in equity) a vested remainder in fee simple absolute, which he might have *disposed* of, and applied the proceeds to his own use. (*Barford* v. *Street*, 16 *Ves.* 135. *Hales* v. *Margerum*, 3 *id.* 299. *Penne* v. *Peacock, Cas. temp Talb.* 41, *referred to in Chance on Powers, No.* 32. 2 *Sugd. on Powers*, 7th *Lond. ed. p.* 53, § 7.) (1.) He might have sold such an estate in this land in market for its full value, appointed the purchaser to it, by virtue of his power under Nicoll's will, and barred and precluded himself from revoking or changing the appointment, by a covenant not to do so. (1 *Sugd. on Powers*, 9, § 4; 43, § 1; 45, § 5; 57, § 1; 59, § 2; 60, 66, 79, § 9; 83, § 3; 88, § 2; 91, § 4; 100, *and n.* (1); 102, § 13; 160, § 5; 224, § 5; 495, § 4; and 497. 2 *id.* 125, § 5; 126, § 9; 127, § 11; 128, § 12; 569; *App. No.* 4, *note* (1); 570, 1, *and* 589, *App. No.* 10. *Chance on Powers, Nos.* 828, 3143, 3147, 3149–3152, 3155, 3208, 9, 15. *Pow. on Powers*, 161, 2, 223, 870, 1. 3 *Pow. on Mort.* 1031. *Platt on Covenants*, 590, § 3. 4 *Kent's Com.* (1830), 321, 2, 485, 6. 3 *Ves.* 470. 10 *id.* 312. 16 *id.* 134. *Atk. on Mark. Titles*, 549, § 3. 3 *Co. Litt.* (1st *Inst.*) §§ 597, 342 *b*, *n.* 298.) (2.) Sill might have done with the 276¾ acres in question, as he actually did with the residue of the trust lands under Nicoll's will; that is, united with all other persons who had

a beneficial interest in the land, and with the trustees, in a conveyance thereof with proper covenants, and received out of the purchase money, as his share, the full value of a remainder in fee simple. In this state, more emphatically than in England, the law leans against restraints upon alienation, and favors the right of conveyance of land by the deed of all parties beneficially interested. (*Hawley* v. *James*, 16 *Wend.* 66, 67, 191, 198. 2 *Chance on Pow.* 577, *No.* 3102. 1 *Sug. on Pow.* 79, § 10, *and authorities above cited.* 4 *Kent's Com.* 325, 326, 327, *and note c ; ed. of* 1830,'*p.* 333–5. *Saunders on Uses and Trusts,* 226. 3 *Coke on Litt.* § 597, 342 *b, note,* 298.) (3.) John L. Sill might have directed that all the money arising from the sale of these 276¾ acres of land, should be "blended with and constitute a part of his residuary personal estate," as he did direct the surplus after paying the legacies, &c. (*Chance on Pow. No.* 43. 51, 988, 1817–18.) (4.) This *voluntary* conveyance of John L. Sill, he being indebted at the time, and having executed his power, so as to gain the interest to himself, and attempted to pass it to volunteers, is a fraud upon his creditors, which this court will not allow. (*Townshend* v. *Windham,* 2 *Ves. sen. p.* 11.)

IV. Irrespective of the preceding points, but more emphatically in view of them, we submit that the land in question, in the hands of the gratuitous devisees of John L. Sill, *is in equity chargeable with the payment of his debts.* (1.) Without reference to the exact legal character of such an unqualified power of disposition, or to the precise grounds of the legal decisions, but upon principles of moral honesty which have become the settled law of the courts, equity prefers creditors to voluntary devisees ; requires a testator to be "just before he is generous ;" and takes John L. Sill to have *meant* what, according to the form of law, he *said* in the outset of his will, but probably did *not* mean : "*I direct the payment of all my just debts.*" (*Preston on Legacies, p.* 57, *marginal p.* 21, 22. *Chance on Powers, No.* 1838. 2 *Sugden on Powers, p.* 31, § 10. *Fonblanque on Equity, vol.* 2, *b.* 4, *part* 2, § 2, *p.* 404–6.) (2.) After the execution of the power by Sill, if not before, the land was

Tallmadge *v.* Sill.

assets for the payment of his debts, upon well settled authorities of common and statute law. (*Holmes* v. *Coghill*, 7 *Vesey*, 499. 12 *id.* 206. *Troughton* v. *Troughton*, 3 *Atk.* 656. *Thompson* v. *Towne*, 2 *Vernon*, 319. *Johnson* v. *Cushing*, 15 *N. H. Rep.* 298. *Townshend* v. *Windham*, 2 *Vesey, sen.* 1, *at* 11. *Lassells* v. *Cornwallis*, 2 *Vernon,* 465, 6. *Bainton* v. *Ward*, 2 *Atk.* 172. 4 *Kent's Com.* 333–5, 338, 9, 343 *et seq. and cases cited in notes. Chance on Powers, No.* 1817, 22, 23, 26, 29–31, 36, 37, *and* 2834. 1 *Sugden on Powers*, 555, §.26. 2 *Sugden* 29, § 7 ; 173, § 2, *and* 589, *ap. No.* 10. 7 *Ves.* 499. *Powell on Powers*, 366, 368. *Preston on Legacies, p.* 35. 1 *R. S.* 734, § 93. 1 *Fonblanque, b.* 1, *ch.* 4, § 12, *note c. Jeremy's Equity, b.* 3, *pt.* 2, *ch.* 2, *p.* 376, 7. *Story's Equity Jur.* 169–72, 252. *Ram on Assets*, 148, 9.)

V. These assets can only safely be reached by a proceeding in equity ; and the plaintiff is entitled to priority of payment over the other creditors of John L. Sill. (1.) It is more than doubtful whether the legal title to this land ever vested in John L. Sill. It must probably be regarded as having passed directly from the trustees, under the will of Nicoll, to the appointees of John L. Sill, subject to the payment of his debts. And our statutes, which might perhaps convert such a power into a legal estate in John L. Sill, (1 *R. S.* 732, §§ 77, 79, *and* 732, 3, §§ 81, 82, 83, 85,) can scarcely be applied to existing powers, without an infringement of the federal constitution. And those statutes, if applicable, continued the legal estate of Nicoll's trustees up to the time of Sill's death. (1 *R. S.* 727, § 48.) (2.) The plaintiff is entitled to priority of payment out of these assets, because his claim is the oldest and almost the only judgment debt against John L. Sill. (3.) But chiefly he is entitled to such priority by reason of his superior diligence in commencing this suit, and by the *lis pendens* establishing the only equitable lien upon the fund. (*Lucus* v. *Atwood*, 2 *Stewart*, 378. *Balantine* v. *Beall*, 3 *Scam.* 203. *McKay* v. *Green*, 3 *John. Ch. R.* 56. *O'Brien* v. *Caulter,* 2 *Blatchford*, 421. *Brinkerhoff* v. *Brown*, 4 *John. Ch.* 671. *Claud* v. *Hamilton*, 3 *Yerger*, 81. *Rhodes* v. *Cousins*, 6 *Rand.* 188. *Corn-*

*ing* v. *White*, 2 *Paige*, 567. *Northrup* v. *Metcalf*, 11 *id.* 570, *McDermutt* v. *Strong*, 4 *John. Ch.* 687. *Thompson* v. *Brown*, 4 *id.* 619. 1 *R. S.* 734, § 93. *Fonb. on Equity*, 3d ed. *vols.* 1 and 2, *p.* 636, *b.* 4, *pt.* 2, *ch.* 111, § 2.)

VI. None of the objections taken by the defendants in their answers or on the trial are valid, to defeat a decree in accordance with the prayer of the complaint. (1.) They object that the residue of the devisees of John L. Sill ought to have been joined with the present defendants. We answer that all the devisees of the 276¾ acres *are* joined; and that to claim payment of our debt out of the other land, which was conveyed in the lifetime of Sill, for a valuable consideration, in good faith, and by the joint deed of all parties beneficially interested, would be asking. *iniquity*, not equity, which we are not at liberty, certainly not *obliged* to do. In respect to these lands, Sill's power of appointment was *extinguished* and *defeasanced* and the land actually conveyed, by his deeds and covenants. (*George* v. *Milbanke*, 9 *Ves.* 189. *Thorpe* v. *Goodall*, 17 *id.* 388. *See previous points and authorities, and Hawley* v. *James*, 16 *Wend.* 67, *foot note, and* 191. 4 *Kent's Com.* 327. 2 *Chance on Pow. No.* 3208, 3102, 3150. *Saunders on Uses and Trusts*, 264, 265, 256.) (2.) Their objection that this action should have been brought for all the creditors of John L. Sill who might choose to unite with us and prove their debts, is contrary to the familiar practice in such cases, and sufficiently answered by the authorities under our 5th point. If John L. Sill had a legal title to this land, then our judgments, which are the oldest, (almost the only ones,) are a prior lien, and we are entitled to come into court to have the cloud and denial of this title raised by the defendants, passed upon and extinguished. If he had *no* legal title, our prior lien upon equitable assets is established by our superior diligence and the commencement of this action. And were this otherwise, the only effect of this objection would be that the court would order a reference, to take proof of the other claims against John L. Sill, for the purpose of a distribution. (3.) Their objection that our claim being "disputed by Sill's executors," should have been referred under the statute,

Tallmadge *v.* Sill.

seems to be groundless in law and fact, and wholly inapplicable to this case. No one disputes the validity or amount of our judgments, nor that they are entitled to be paid out of the assets of John L. Sill. The matters really in dispute are by no means proper to be referred by us with the executors. (4.) The objection on the part of the defendants, that under the assignments and the agreement, Peck is joint owner with the plaintiff of the judgment and decree assigned, and should have joined as a party plaintiff, is purely technical and apparently groundless. The assignments are *absolute* and "without recourse," and Peck is indemnified against any costs or expenses. The fact that the ultimate amount recovered by the plaintiff is adopted as a measure of what further consideration he was to pay, by no means makes Peck a joint owner of the decree and judgment, or a necessary party. If A. sells and delivers 100 bushels of wheat to B. for $50 and one-half of what B. can sell it for over that sum, B. agreeing not to give away any of it, who owns the wheat? (5.) The objection taken on the trial to the proof of the decree, judgments and deeds to which John L. Sill was a party, as *res inter alios acta*, seems to be groundless. His executors, in regard to this estate, are Sill's *representatives*, and the other defendants his *privies in estate*, and both bound by judgments suffered and deeds executed by him. (*Bouvier's Law Dic. " Privies." 1 Phil. Ev. 324, and Cowen & Hill's Notes, p.* 813–817.) (6.) Equally untenable, it seems to us, is the objection that the plaintiff purchased the decree and judgment in question for a price below their face. This objection appears to be the misapplication of a rule adopted for other purposes, chiefly for the relief and protection of sureties. It never had any application to a judgment sought to be enforced against the assets of the judgment debtor in the hands of his voluntary donee. If Peck had sued, he would have been entitled to the full amount of the judgment and decree, and the plaintiff as his assignee has all his rights. It can make no difference to the defendants, who owns or sues on them. It is therefore submitted with great respect and confidence, that the plaintiff's claim has been fully

established, that the objections made to his recovery are not tenable, and that he is entitled to the judgment of the court in accordance with the prayer of his complaint.

*W. L. Learned,* for the defendants. As to the first prayer of the complaint: I. John L. Sill had no legal estate in this land. All the interests of the *cestuis que trust* terminated with John L. Sill's life. The estate of the trustees, therefore, terminated with his life. (4 *Kent's Com.* 310, *note a. Nicoll* v. *Walworth,* 4 *Denio,* 385, *and cases there cited.*) This is common law as well as statute. (1 *Sug. on Pow.* 119. 1 *R. S.* 728, § 61, 62.) Even the contingency on which he was to be a *cestui que trust* never took effect. Upon his death there was a contingent remainder, in default of appointment, to his issue living at his death. There being no such issue, the estate would have descended to the heirs of Nicoll, unless it had been disposed of under the power. John L. therefore, had only a possibility, (which never happened,) of a life interest as *cestui que trust* and a power.

II. If John L. Sill had a legal estate, this suit is improper. The judgment should be enforced by execution, and the other debt in the surrogate's court. As to the second prayer of the complaint:

III. There is no liability on the decree, because there is no master's report or confirmation thereof.

IV. Neither the judgment nor the decree, as to these defendants, are any evidence of an indebtedness of John L. Sill. (1.) A judgment is evidence only against parties and privies. (1 *Greenl. Ev.* 522, 523, 189.) (2.) These defendants are not privies to John L. Sill. They take under Nicoll. (2 *Chan. on Pow.* § 1387, 1392.) (3.) A right to maintain this action must depend on Sill's *actual* indebtedness, and not on his *admissions.* A judgment and decree are only admissions.

V. To make this property liable for John L. Sill's debts, is to defeat Nicoll's lawful intention. (1.) The property belonged absolutely to Francis Nicoll. (2.) He chose to give it on legal trusts, and to give John L. Sill only a power. (3.) The

defendants do not take by the gift of Sill, but by that of Nicoll. (2 *Chance on Pow.* § 1387, 1392. 2 *Sug. on Pow.* 25, 6. *Marlborough* v. *Godolphin*, 2 *Ves.* 78. *Bradish* v. *Gibbs*, 3 *John. Ch.* 550.) The obvious intention of Nicoll was that his property should go to such of his relatives and descendants as Sill might select.

VI. This property is not, by John L. Sill's will, made equitable assets for the payment of his debts. (1.) Such is not the effect of the direction to pay debts. This direction is before the testator speaks of and attempts to execute the power. It does not purport to be in execution of the power, but applies to his own property. (4 *Kent's Com.* 334, 335. 1 *Jarman on Wills*, 628. *Blagge* v. *Mills*, 1 *Story, C. C.* 445. 1 *R. S.* 733, § 126.) Even if the second item had been a devise of all the testator's property, this land would not have been conveyed thereby, but would have passed under item third. (*Lowe* v. *Pennington*, 10 *L. J. N. S. ch.* 83.) Besides, John L. had a power, not to charge this land, but to convey and dispose. It is inconsistent with the specific legacies. Nor is this clause a defective execution of the power which equity will aid. (1 *Story's Eq. Jur.* § 169, 170, 175 *and notes.* 2 *Chance on Pow.* § 2818, *&c.*) (2.) The execution of the power has not made the property equitable assets. The principle relied on by the plaintiff, as stated in the text books, is that a general power of appointment over a fund, when exercised, makes the property assets for creditors. (2 *Sug. on Pow. p.* 28, § 10 *and* 11. 2 *Chance on Pow.* § 1817, *et seq.*) This position has never been sustained in this state, and is inequitable in itself. (1 *Story's Eq. Jur.* § 176, *note* 2.) There is no justice in taking property which the appointees hold by the gift of the donor of the power, and applying it to debts of the donee. (*See 5th point. Holmes* v. *Coghill*, 12 *Ves.* 212.) The principle, as established by the English authorities, is subject to these restrictions: 1. It is applied only to personal estate, or a fund charged on land. 2. A general power of appointment is one which can be exercised both by deed and will, thus giving the donee full power to exercise the power for his own ben-

efit.  3. In almost every case, the property has come originally from the donee of the power; or, 4. There have been peculiar circumstances.

The following, it is believed, are all the English cases touching this principle : *Ashfield* v. *Ashfield*, (2 *Vern*, 287, *A. D.* 1693.) This was the case of a voluntary settlement by Ashfield, of his own personal estate in trust, as he should by deed or will appoint, and in default of appointment to his executors, administrators and assignees. *Thompson* v. *Towne*, (2 *Vern.* 319, *A. D.* 1694.) In consideration of the conveyance of land from the defendant's testator, the plaintiff gave defendant's testator a bond, conditioned to pay such legacies as defendant's testator might give, not exceeding £500. Plaintiff brought his suit to retain out of the £500 a debt due him from defendant's testator, and was allowed to retain the same. (*See Raithby's note to Vernon.*) *Grise* v. *Goodwin*, (2 *Freem.* 264, *A. D.* 1703.) A power *given* to the testator to dispose of a term of years in land, and exercised by him, was held not to be assets. *Lascelles* v. *Lord Cornwallis*, (2 *Vern.* 465, *A. D.* 1704.) The case of a power *reserved* to charge an estate, by *deed or will*, with £3000. The power was executed by deed, as a collateral security against incumbrances on certain land. No incumbrance arose, and the donee of the power exercised it again by will. *Shirley* v. *Lord Ferrers*, decided by Lord Talbot, A. D. 1733–1736, not reported, referred to in *Lord Townshend* v. *Windham*, (2 *Ves. sen.* 2) It is said in a note to *Holmes* v. *Coghill*, (7 *Ves.* 503,) that the decree does not appear to include a decision on this point ; and by Lord Hardwicke, (2 *Ves. sen.* 2,) "I do not know but *this* may be an interest in the land itself, and then that authority," (*Shirley* v. *Ferrers*) "*is out of. the case.*" *Hinton* v. *Toye*, (1 *Atk.* 465, *A. D.* 1734.) This case does not touch this question. The question is whether, under an appointment of money to an appointee, "to be employed to such charitable uses or other purposes as he should think fit," the appointee took a beneficial estate, or a trust. *Bainton* v. *Ward*, (2 *Atk.* 172, *A. D.* 1741.) This was the case of a power, by deed or will, to charge an estate with a

certain sum. Lord Hardwicke's general expressions in this action must be erroneously reported. (2 *Chance on Powers*, § 1830.) *Pack* v. *Bathurst*, (3 *Atk.* 269, *A. D.* 1745.) A power to charge a sum of money on land, by deed or will, executed by voluntary deed, held assets. *Troughton* v. *Troughton*, (3 *Atk.* 656, *A. D.* 1747.) The testator conveyed incumbered land to the plaintiff, with a covenant against incumbrances; plaintiff gave a bond to pay £300 to such person as the testator should by deed or will appoint. Testator appointed and died. Plaintiff brought his bill to retain, and was allowed to retain, out of the £300, the amount of the incumbrance. *Lord Townshend* v. *Windham*, (2 *Ves. sen.* 2, *A. D.* 1750.) The grantor, on a conveyance of his land, took back from the grantee a covenant to permit such persons as the grantor should, by *deed* or *will*, appoint to enter and receive the rents and profits for a time. The grantor appointed by deed, and the fund was made assets for creditors. *Harrington* v. *Harte*, (1 *Cox*, 131, *A. D.* 1784.) Personal property was subject to appointment by deed or will. The donee of the power made no appointment. After her death the plaintiff, her administrator, claimed the property, but was held not to be entitled. The rights of creditors were not in question. *George* v. *Milbanke*, (9 *Ves.* 190, *A. D.* 1803.) The testator limited certain of his real estate in trust, to raise by sale or otherwise a fund, to be paid as he should by deed or will appoint. He appointed a part by deed and the whole by will. The plaintiff was a creditor and administrator. The fund was declared part of the personal estate. *Holmes* v. *Coghill*, (12 *Ves.* 206, *A. D.* 1806,) affirming *S. C.* (7 *Ves.* 498.) The case of a power to charge land by deed or will not having been executed, it was not held assets. *Jenney* v. *Andrews*, (6 *Mad.* 264, *A. D.* 1822.) The case of a power to appoint personal property by will. The donee of the power made his will, and afterwards became a bankrupt, and died. The suit was by the appointee, against the assignees in bankruptcy; and it was held that she was entitled to the fund.

VII. In any event, this suit should be brought for the benefit of all the creditors of John L. Sill. (*Cushing* v. *Johnson*,

15 *N. H. Rep.* 299.) If assets at all, this property is equitable assets ; and · equitable assets are to be distributed to all creditors equally. (1 *Story's Eq. Jur.* § 554 *and cases cited.* 2 *Fonb. Eq.* 403, *note. Moses* v. *Murgatroyd,* 1 *John. Ch.* 119. *Benson* v. *Le Roy,* 4 *id.* 651. *Morrice* v. *Bank of England, Cas. Temp. T.,* at 220.)

VIII. The plaintiff would not, under any circumstances, be entitled to recover the whole amount of these claims. (1.) He has very little equity. He voluntarily bought these claims for $300, with the intention of bringing this suit against parties who owed Peck nothing. He has no *legal* claim, and only a *refined* equity against the defendants ; and it is not equitable that, by purchasing a lawsuit, he should make a profit of 4000 per cent. (2.) Norman Peck has, at least in equity, the same interest with the plaintiff. (3.) Norman Peck has already received on this decree, by the sale, $2820 ; and he should therefore be postponed until other creditors have received an equal per centage from these equitable assets. (1 *Story's Eq. Jur.* § 557. *Purdy* v. *Doyle,* 1 *Paige,* 558. *Wilder* v. *Keeler,* 3 *id.* 167.)

IX. If maintainable at all, this action should be against all the lands affected by the power, including the four other farms devised by John L. Sill. It will not be questioned that the will of John L. Sill was a valid execution of the power. This is the plaintiff's claim. By this will Sill disposes of all the land over which he had a power, including this in controversy. If any one is to bear these debts of Sill, they should not be thrown on these defendants exclusively. The reply to this will probably be, that as to the Soop, the Baker, the Sill and the Evertsen farms, the power had been extinguished or barred. We must therefore examine, 1. What kind of a power John L. Sill had. 2. Could it be extinguished or barred? 3. If it could be, has it been extinguished or barred? (1.) John L. Sill had a power *simply collateral.* A power is simply collateral when given to a person who has no interest in the land, and to whom no estate is given. (4 *Kent's Com.* 317. 1 *Sug. on Powers,* 43, 45. 1 *Chance on Powers,* § 26–40. *Edwards* v.

Tallmadge *v.* Sill.

*Slater, Hard.* 410 *b. Shep. Touch.* 529; *Booth's opinion at end. Coke Lit.* 342. *Harg. & But. note,* 298. *Jacob's Law Dict. tit. Powers.*) Sill had no estate or interest in the land, but only a mere *naked possibility* of being equitably interested in the rents and profits at some future time. And this possibility never took effect. He could not release this possibility. (*Jackson* v. *Waldron,* 13 *Wend.* 212.) This possibility of an equitable interest in the rents and profits did not make Sill's power other than simply collateral. (*Jones* v. *Verney, Willes,* 169, 177. 5 *Denio,* 693, 654.) (2.) Such a power cannot be extinguished or barred. *Digges' case,* 1 *Rep.* 173 *a.* 1 *Sug.* on *Powers,* 48, 49. 4 *Kent,* 346. *West* v. *Berney,* 1 *Russ. & My.* 431. 2 *Chance on Powers,* § 3105, *&c. Co. Lit.* 342 *b. Harg. & But. n.* 298. *Co. Lit.* 237 *a,* 265 *b.*) Again, the right to make a will is given by statute, and no man can deprive himself of it. The only question can be on what property the will operates; and that is decided in this case by the will of Francis Nicoll. (1 *Sug. on Powers,* 79.) (3.) Even if it were possible to bar it, this power has not been barred or extinguished. Conveyances of the Sill and of the Evertsen farm were executed by the trustees, by Mrs. Sill, John L. Sill and Francis N. Sill to Richard Sill, with covenants by John L. that he would not convey by will. The only title which passed by these conveyances was an estate for the life of John L. The contingent remainders were still in Richard and Francis N., because they could not be conveyed. (*Jackson* v. *Waldron,* 13 *Wend.* 212. *Edwards* v. *Varick,* 5 *Denio,* 664.) And in default of appointment, and if that remainder should not take effect, then the fee was in the heirs of Francis Nicoll. John L. Sill's covenant was therefore with a person having no estate in the land which could be affected by Sill's will, and could not operate to release the power. For if the power had been released, (as the contingent remainder did not take effect,) the title would be not in those holding under the conveyances, but in the heirs of Francis Nicoll. Nor do the order of the supreme court, and the deeds made subsequent thereto, have any other effect than that of exhibits K and O. The only parties to the order were John

L. Sill and Abigail L. Sill; and it was entirely *ex parte.* The direction to sell was void, if it attempted to pass an estate after the life of John L. Sill. *That* was the limit of the trust. The direction at fol. 242 was equally void. The clause, that the land conveyed should be exempt from disposition by Sill's will, it was beyond the power of the court to make. The whole order was an unathorized interference with vested rights under Nicoll's will. The same may be said of the act of the legislature, (*Session Laws*, 1852, *ch.* 322.) It cannot be said that these conveyances operated in execution of the power, for that could only be executed by will. (2 *Sug. on Powers*, 128. 1 *id.* 256. 4 *Kent's Com.* 331. 1 *Chance on Powers*, § 825. *Anderson* v. *Dawson*, 15 *Ves.* 532.) The devisees therefore must take under Sill's will, if at all, and must be parties with these defendants.

*By the Court*, PARKER, P. J. It is clear that John L. Sill had no legal estate in the land. That was vested in the trustees. He was not even entitled to receive the rents and profits from the trustees, unless he survived his wife as well as his children; and his wife was living at the time of his death. The contingency, therefore, on which he could derive a benefit as *cestui que trust* never happened. But under the will of Francis Nicoll, John L. Sill was empowered and authorized to convey and dispose of all the land, or any part thereof, by his last will and testament under his hand, executed in the presence of three witnesses in due form of law, and to limit and appoint the uses thereof in such manner as he might deem proper; and that power was executed by John L. Sill, who by will devised the property in question to Horace L. Sill and William A. Woodward in trust for the benefit of the other defendants. The principal question to be determined in this case is, whether the power thus conferred upon John L. Sill and executed by him, gave to him an interest in the property which can be reached by the creditors as equitable assets. The will of Francis Nicoll was executed and took effect previous to the adoption of the revised statutes, and the question must there-

fore be determined without reference to their provisions on this subject.

The elementary writers all agree as to the general rule. It is stated by Chancellor Kent, (4 *Kent's Com.* 339,) as follows: "A court of chancery holds that where a person has a general power of appointment over property, and he actually exercises his power, whether by deed or will, the property appointed shall form part of his assets, and be subject to the claims of creditors in preference to the claims of the appointee; and Sugden states the rule in nearly the same language. (2 *Sugden on Powers*, § 27.) Chance (*Chance on Powers*, § 1817,) after saying that a power is not property, adds: "If, however, the donee see fit to execute his power, thus assuming a dominion over the property, it may thenceforth be regarded as a part of his estate, and as such be subject at least in equity, to the claims of creditors." The English cases generally cited in support of the rule thus stated by the elementary writers are, 2 *Vernon*, 287; *Id.* 319; *Id.* 465; 1 *Atk.* 465; 6 *Mad.* 264; 2 *Cromp. & Mees.* 124. In *Grise* v. *Goodwin*, (2 *Freeman*, 264,) a power given to a testator to dispose of a term of years in land, and which was said to have been exercised by him, was held not to be assets. But that case has not been sustained, and Chance says of it, (*Chance on Powers*, § 1826,) " even assuming that the will in that case operated as an appointment (which he said was contrary to all the cases, because no reference was made in it to the power,) the fund would now be considered assets." I shall have occasion to speak further hereafter of the cases from which the general rule above stated has been deduced.

But it is claimed in this case on the part of the defense, that Sill's power of appointment was not *general* within the meaning of the rule I have referred to, because he was only authorized to convey by will and not by deed. The elementary writers recognize no such distinction. Sugden says, (1 *Sugden on Powers*, 471,) " By a *general* power we understand a right to appoint to whomsoever the donee pleases. By a particular power it is meant that the donee is restricted to some objects

designated in the deed creating the power, as to his own children." The definitions were established and well understood long before they were substantially adopted by our revised statutes. (1 *R. S.* 732, §§ 77, 78. *See note of Powell to Fearne on Executory Devises,* 347 *to* 388. *Humphrey's observations on Real Property,* 83. 4 *Kent's Com.* 318.)

I concede that in most of the cases referred to in the elementary books and cited by counsel on the argument, the power was authorized to be executed either by deed or will at the election of the donee of the power, but in none of these cases is the distinction here contended for, recognized, or the decision placed upon any such ground. Whether the power to appoint be by deed or will, in either case the control of the fee is absolute, and may be equally beneficial to the person executing it. His disposition of the fee by will may be final and conclusive, and if he may dispose of it, to whom, and for such uses as he pleases, he may secure to himself the whole beneficial interest, as by devising it to pay his own debts. The only difference between a disposition by deed or by will is that in the latter case his conveyance will not operate till his death. This, in effect, postpones the executing of the power by the donee, but in no respect lessens the extent or absoluteness of his control, or detracts from its beneficial character.

If the power be not conferred till the person to whom it is given is about to transact the last business of his life, in the last moments of his existence, it would be entirely immaterial whether he was authorized to execute it by will alone or by either deed or will, at his discretion, as in either case the estate to be created would take effect at his death.

A power is certainly none the less general because there is delay in conferring it, or because delay is required in its execution. If the power here conferred were directed to be executed either by deed or will when the appointee should arrive at a given age, and not before, it would hardly be contended that the power was not general because thus postponed. If the power be absolute, and the discretion as to the application of the avails unrestricted, I can see no difference in principle,

whether it may be executed by deed or by will, or whether it may be executed immediately or only at a future day; or how long time is given to the donee for its execution, if there is sufficient for that purpose. When executed, the control being absolute the power is general, and not till then could it be deemed to be property, for until executed there would be no evidence of its acceptance.

A general power to devise by will gives to the donee of the power the absolute control over a remainder in fee after his death. It places the property, in that respect, upon the same footing as if it had belonged to the donee, independent of the power. When a power is executed by deed, the act of conveyance is conclusive upon the grantee : when by will only, it may be revoked at pleasure during the life of the testator. This distinction is claimed as available to the defense; but surely without good reason, for the absoluteness and extent of the control of the property is even greater in the latter case than in the former, and certainly none the less beneficial to the donee of the power.

The principle upon which the right of the creditor rests is, that the absolute power of conveying or disposing of property for one's own benefit, makes the person to whom it is given the owner. The power of absolute and beneficial control cannot and ought not to be separated from the ownership. (*Rev. Notes,* 3 *R. S. 2d ed.* 589.)

This precise question was decided, after a very full discussion, in *Johnson* v. *Cushing,* (15 *N. H. Rep.* 313,) and I refer to the opinion of the learned judge in that case for a more full examination of the same objections urged here. In that case the power was given to dispose of property by deed or will, to take effect at the death of the donee of the power. That was conferring no greater authority than if it had been confined to an execution by will alone; for a deed to take effect at his death would have only the same effect. In that case the court held the power to be general, and adjudged the property, over which the power had been executed, to be assets liable for the payment of debts.

In most of the English cases cited, the power was to be executed over personal property, but Chance says (§ 1836) "no discussion has been founded on that point, the property appointed appears, according the authorities, to be considered as having, in a sense, become the donee's." A fair examination of these cases shows that this was the principle upon which they were all made, whatever peculiar circumstances some of them may have exhibited. Whether the property be real or personal can make no difference in principle. In both cases the same rule will be applicable. The questions raised and decided in the case of *Johnson* v. *Cushing*, above cited, cover the whole ground. That was a case of a power over real property, the execution of which was restricted, as to its taking effect, till the death of the donee of the power. If that case was correctly decided, and I see no reason to doubt it, either upon authority or principle, it is conclusive against the defendants in this case. In the very able and ingenious argument for the defense, the fact was adverted to, that in most of the English cases there were other peculiar circumstances, such as, that in some of them the property came originally from the donee of the power, and in others, that the remainder, in default of appointment, went to the executors or heirs of the donee of the power. But I lay these circumstances out of view, as I do the significant fact that by the will of Nicoll the trustees were authorized at any time during the continuance of the trust, to cut down any timber or wood on the land, sell it and pay the proceeds to John L. for his sole use    If I am right in holding that the controlling principle is that ownership is inseparable from the absolute beneficial power of disposition, these other circumstances are entitled to no weight, and cannot be taken into consideration.

My conclusion in this case is, that the power to dispose of the fee of the land by will was a general power of which Sill might have the exclusive benefit, and that, having exercised it, his interest will be deemed assets upon which the plaintiff's demands are equitable liens.

I think the evidence of the judgment and of the decree was properly received. The property being adjudged to be Sill's,

it is enough to introduce the same evidence of Sill's indebtedness as if the action were against Sill alone. Such evidence is always introduced as proof of the extent of indebtedness, between a creditor and a third person, where property has been fraudulently transferred. It is never necessary in such a case to prove more than the judgment against the debtor, who is claimed to be the owner of the property seized. The action being to establish a lien on specific property, is of the nature of a proceeding *in rem;* and in such case a judgment is conclusive as to all the parties. (4 *Selden,* 392. 1 *Stark. Ev.* 228. *Phil. Ev.* 228, 328.)

I do not think it was necessary that this action should be prosecuted for the benefit of all the creditors of John L. Sill. It is brought to enforce an equitable lien on land, and I see no reason why the rule laid down in *Corning* v. *White,* (2 *Paige,* 567,) is not applicable. By that rule the judgment creditor who first files his bill obtains a priority in relation to the property and effects of the defendant which cannot be reached by execution at law. But if the judgments against Sill are to take precedence according to their priority, it would not affect the plaintiff's claim; for there is no evidence of any older judgment than the plaintiff's.

Nor was it necessary that the plaintiff's claim should be made against all the land affected by the power. The plaintiff has preferred to seek to enforce his claim against a portion of the premises not conveyed by Sill previous to the making of his will, and he has thus avoided the litigation of other questions that might have been raised. If the lands on which his claim is made are not of sufficient value to pay the plaintiff's debt, it will be a misfortune to the plaintiff but not a matter of which the defendants can complain.

The defendants cannot object that the plaintiff purchased these judgments for less than the whole amount due, or that the plaintiff, if he recovers, will be bound to pay a sum of money to some other person.

The measure of the lien to be enforced against property adjudged to be Sill's is the amount of Sill's indebtedness; and

as that debt belongs to the plaintiff, the defendants can be made responsible to no previous owner of it, and need no protection against any action by any such person.

The plaintiff must therefore have judgment declaring the judgment recovered in favor of Norman Peck, a lien on the 276¾ acres of land for the amount due thereon, viz : $2,468.51, with interest from 17th February, 1845, and the decree a lien for the amount unpaid, viz : $6,997.52, and interest thereon from 20th March, 1845, and directing the sheriff to sell the land to satisfy said liens, in the same manner and with the like notice, as on sales under executions.

[ALBANY GENERAL TERM, September 3, 1855. *Parker, Wright* and *Watson,* Justices.]