Rhode Island Hospital Trust Co., *Trustee vs.* Mary B. Anthony *et al.*

Rhode Island Hospital Trust Co., *Trustee vs.* Annie A. A. Perkins *et al.*

JUNE 27, 1928.

Present: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

SWEETLAND, C. J.   In each of the above entitled suits in equity the complainant as trustee is seeking instruction as to the disposition of a trust estate.

Each of the causes being in the Superior Court ready for hearing for final decree has been certified to this court for determination.   The same questions are at issue in both and the causes have been heard together.

The first of these suits relates to a trust created by the will of Jane L. Beckwith, late of Providence, who deceased in February, 1889, and whose will was duly probated in the Municipal Court.   The second suit relates to a trust created by an irrevocable deed of trust of Lorania C. Beckwith to the complainant, which deed was executed by her on June 15, 1908, while she was domiciled in Rhode Island.   Lorania C. Beckwith died on February 24, 1925. She was a grandchild of said Jane L. Beckwith.

Jane L. Beckwith by her will gave her homestead estate and other property to the complainant in trust to permit her granddaughter Lorania to occupy the homestead and to receive the income from all the trust estate during her natural life "with the remainder over after her decease absolutely and free of the trust herein created to such person or persons and to such uses and purposes as she shall by last will and testament appoint, and in default of such last will and testament, or other instrument in the nature of a last will and testament, then to any child or children or their descendants of my said granddaughter then surviving, the same to take *per stirpes* and not *per capita.*"   Then follow provisions for the disposition of the trust estate upon the death of Lorania intestate, and without children or other descendants.

Lorania C. Beckwith in said deed of trust provided that the complainant as the trustee named therein should during her life pay over to her such portions of the trust estate as she might request which would not reduce the principal

thereof below $200,000, with the following provision as to the disposition of the trust estate upon her death: "upon my death the said trustee shall convey, transfer, deliver and pay over all of the principal and accumulated net income of said trust estate then in the possession of said trustee to such persons and in such sums or proportions as I shall by last will and testament direct, discharged of said trust." Then follow provisions for the disposition of the trust estate upon the settlor's death without leaving a last will and testament.

On May 22, 1923, at Boston, Lorania C. Beckwith made her last will, in which she described herself as of Norfolk, in the county of Norfolk and commonwealth of Massachusetts and appointed Joseph S. O'Neill, Esq., of Belmont, Massachusetts, as executor. In this will she disposes of certain articles of "personal use", gives a life annuity of $500 to Mary Manton and a legacy of $10,000 to each of her mother's surviving sisters, viz., Frances King and Annie Yarnall; she devised her farm in Massachusetts to Mary B. Anthony, Ellen M. Anthony and Jane L. Anthony, daughters of her grandmother's sister, Mrs. John B. Anthony. She directed the payment of her indebtedness to the Rhode Island Hospital Trust Company, and then gave the residue of her estate in certain shares to the persons therein named who are all of the living descendants of said Mrs. John B. Anthony. This bequest of remainder is as follows: "All the rest, residue and remainder of my estate and property, real, personal and mixed, of every kind, nature and description and wherever situate, of which I shall die seized, possessed or entitled, and as to which I shall at the time of my death have the power of disposition, (including expecially all estate and property as to which I have the power of appointment under the will of my grandmother, Jane L. Beckwith, and under my deed of trust to the Rhode Island Hospital Trust Company, hereinbefore mentioned) I give, devise and bequeath as follows." Then follows a designation of the beneficiaries and the shares of the residuary estate given to each. The ninth clause of the will is as follows:

"Whereas the greater part of my property is now held in trust by the Rhode Island Hospital Trust Company, hereinbefore named, upon the trust, among others, that said trustee shall upon my decease convey, transfer, pay over and deliver all the trust estate and property then in the possession of said trustee to such persons as I shall by my last will and testament appoint and direct, now therefore, I hereby appoint the legatees hereinbefore named as the persons to whom said trust estate shall be conveyed, transferred, paid over and delivered, and hereby direct said Rhode Island Hospital Trust Company to convey, transfer, pay over and deliver the trust estate and property which shall be in its hands and possession at the time of my decease to the persons and in the amounts herein mentioned, discharged of said trust."

By the terms of her will it was clearly the intention of the testatrix, Lorania C. Beckwith, to appoint the said trust estates remaining at her death to the beneficiaries named in her will.

The first matter as to which the complainant seeks instructions arises by reason of the following circumstance. Shortly before her death Lorania C. Beckwith went alone to Los Angeles, California, and there on February 20, 1925, four days before her death, the respondent Norman Morrison Hodgkin was born to her out of wedlock. It is claimed by the guardian *ad litem* of this child that the statute of this State in favor of pretermitted children operated to annul the exercise by Lorania C. Beckwith in her last will of the powers of appointment conferred upon her by the two trust instruments involved in these suits. The statute in force at the time of the testatrix's death is as follows (Gen. Laws 1923, Chap. 298, Sec. 22): "When a testator omits to provide in his will for any of his children or for the issue of a deceased child, they shall take the same share of his estate that they would have been entitled to if he had died intestate, unless it appears that the omission was intentional and not occasioned by accident or mistake."

The respondents, who are the legatees under the will of Miss Beckwith, contend that if said statute is applicable to property, in which the deceased parent had only a life interest with a power of appointment over it by will, the facts appearing in evidence indicate that the omission of the testatrix to provide for this after-born child was intentional and not occasioned by accident or mistake. This court has held that the statute applies to children born after as well as to children born before the execution of a will. *Rhode Island Hospital Trust Co.* v. *Hail*, 47 R. I. 64. The evidence shows that the testatrix had gone to California for the express purpose of being delivered of the child of which she was pregnant, in order that her condition might be concealed from all persons by whom she was known in the East. It is urged by said respondent legatees, that it may well be assumed from the testimony that the expectant birth of this child was constantly present in her mind. She was told by the physician attending her of the seriousness of her condition, and before the operation from which she died he informed her of the possibility of a fatal result. In response to the suggestions of her physician on one or two occasions Miss Beckwith stated that she did not wish to make a will or change her existing will. The claim is not without force that her action in thus permitting her last will, in which no provision was made for this after-born child, to remain unchanged until her death was intentional and not occasioned by accident or mistake. We do not, however, base our answer to the request for instructions upon those considerations and specifically refrain from making a determination upon this contention of the residuary legatees.

In our opinion the claim of the infant respondent is negatived by the terms of the statute in question. It is the testator's own inheritable estate in which the pretermitted child is to take his share by force of the statute. The property over which a testator has a power of appointment is not a part of that testator's estate. The authority given to the donee of a power does not vest in him any interest or

title in the property which is the subject of the power. An appointee under a power though he be a child of the donee does not take by descent from the donee but by purchase from the donor of the power. Such is the settled law upon this subject. *R. I. Hos. Trs. Co.* v. *Commercial Bank,* 14 R. I. 625; *Tilton, Petitioner,* 21 R. I. 426; *Manning* v. *Board of Tax Commissioners,* 46 R. I. 400. Save as to a provision unessential in this case, the language of the Rhode Island statute for the benefit of a child not provided for in the will of his parent is identical with that of the Massachusetts provision having the same purpose. The statute became a part of our law in 1896 and was undoubtedly adopted from that of Massachusetts. The question presented here was considered by the Supreme Judicial Court of Massachusetts in *Sewall* v. *Wilmer,* 132 Mass. 131, decided in 1882. This Massachusetts case dealt with a will in which the testatrix appointed property, over which she had a power, to her husband without making provision therein for her children. The court held that the Massachusetts statute in favor of pretermitted children was "limited to estate of a testator to which his children would have derived title from him, under the statutes of descent and distribution, if he had made no will; and has no application to estate which was not vested in him, in which he had no inheritable title, but a power of appointment only." In accordance with the rule of construction recognized by this court it should be presumed that our statute was adopted having in view the judicial construction that had been placed upon a like provision by the Massachusetts court. In 1841 the Massachusetts provision was considered by Judge Story in the case of *Blagge* v. *Miles,* 1 Story, 426. Our opinion is in accord with the conclusion reached in that case.

As to the first question regarding which instruction is sought, we say that the infant respondent Hodgkin did not, by reason of the statute for the benefit of pretermitted children, gain an interest in either of said trust estates as claimed in his behalf by his guardian *ad litem.*

The second matter as to which the complainant seeks instruction arises by reason of the claim of the respondent Joseph S. O'Neill, executor of the will of Lorania C. Beckwith. This respondent represents that the estate of Miss Beckwith is insufficient for the payment of her debts and expenses of administration, and claims that, by reason of her exercise of the general power of appointment given to her by the trust instruments before us, she has rendered the appointed property equitable assets for the payment of the amount of her debts which are in excess of the assets of·her individual estate; and that the complainant should now turn over the trust property to him to be administered. The respondent O'Neill urges this demand in reliance upon the rule of the English chancery courts which has been followed by the courts in some of the states of the Union, notably Massachusetts. If we were convinced of the soundness of the English doctrine, there are circumstances surrounding this case which would cause us to refuse to direct this complainant to turn over these trust estates to the executor to be taken by him into a foreign jurisdiction there to be administered. The respondent executor has not satisfied us that the assets of the estate of Miss Beckwith upon a prudent administration are insufficient for the payment of her debts. It appears that the individual estate of Miss Beckwith was about $24,340. The inheritance taxes affected by the trust estates are to be paid by this complainant trustee and are recognized as obligations against it. The debts of Miss Beckwith at the time of her death, the federal estate tax and other charges against the estate, exclusive of the fee of the executor and that of his counsel, amount to about $15,295. There was no contest over the probate of the will nor other matter brought to our attention which would involve difficulty or great expense in the administration of this comparatively small estate. Yet in his testimony the respondent O'Neill stated that the total claims against the estate will approximate from sixty-eight to seventy thousand dollars. In no event would we order a

transfer of the trust estates which would render it necessary for these respondent appointees to follow the estates to a foreign jurisdiction, there to raise their objections to the allowance of claims, the reasonableness of which appears questionable. If we should adopt this English rule we would require the creditors of Miss Beckwith, or the executor as their representative, to apply to the Superior Court of this State sitting in equity for a decree directing the payment by this trustee of such sums as should be found by the Superior Court to be due and payable from the trust estate.

The English doctrine upon which the executor relies has never been adopted and applied in this State and upon principle it does not commend itself to us. The appointed property is not a part of the donee's estate and as such available in law for the payment of his debts. It is contrary to the intent of the donor that the property which was the subject of the power should be disposed of save as the donee should appoint, or as the donor has prescribed in default of appointment. It would not be a fraud upon his creditors if the donee failed to make an appointment for their benefit or if he appointed the estate to others. Notwithstanding these essential principles, from the fact that the donee might have appointed the property to the payment of his own debts if he had so wished, the English chancery courts have assumed the authority to "seize the property on its way from the donor to an appointee and apply it to the satisfaction of the obligation of an appointor." *Hill* v. *Treasurer*, 229 Mass. at 476. This is the sole basis for the English doctrine upon which the respondent executor relies.

The early English cases have been critically examined by the Vermont court in *Wales* v. *Bowdish*, 61 Vt. 23, and that court has reached the conclusion that such cases generally relate to transactions whereby the owner of property has created in himself a power to appoint that property in fraud of his creditors, and equity has defeated his purpose by treating the appointed property as assets to be used for the payment of his debts or they have been cases where the

donee enjoyed something more than the mere exercise of the power. The modern English cases, however, present no such distinction and the rule enunciated in those cases and by American courts which have adopted the English doctrine undoubtedly support the claim made by the respondent O'Neill on the strength of the Massachusetts cases cited by him. This doctrine has been adopted in New Hampshire, North Carolina, Massachusetts, District of Columbia and Virginia and probably in Delaware and New Jersey. *Johnson* v. *Cushing*, 15 N. H. 298; *Rogers* v. *Hinton*, 62 N. C. 101; *Clapp* v. *Ingraham*, 126 Mass. 200; *Knowles* v. *Dodge*, 1 Mackey, 66; *Duncanson* v. *Manson*, 3 App. Cas. D. C. 260; *Freeman* v. *Butters*, 94 Va. 406; *Security Trust Co.* v. *Ward*, 10 Del. Ch. 428; *Crane* v. *Fidelity Co.*, 99 N. J. Eq. 164. It has sometimes been said to be the rule in New York by reason of the decision in the earlier case of *Tallmadge* v. *Sill*, 21 Barb. 34, but the later case of *Cutting* v. *Cutting*, 86 N. Y. 522, although based upon a statute clearly disputes the reason of *Tallmadge* v. *Sill* and the English doctrine generally, and regards the statute as enacted in part to do away with the irrational nature of the English doctrine. The English rule has been adversely criticised as unsound in principle by Judge STORY in his work on Equity Jurisprudence, note to section 176, now appearing as note to section 250, 14th Edition. The English rule has not been adopted in a number of American cases. In *Wales* v. *Bowdish*, 61 Vt. 23, the doctrine was repudiated so far as it would have been applicable to the case before the court. In *Balls* v. *Dampman*, 69 Md. 390, the English rule was not applied and was apparently disregarded. In *Price* v. *Cherbonnier*, 103 Md. 107, in the course of the opinion the rule was unfavorably referred to. It would not have been applicable, however, as the power under consideration was not a general power of appointment. In *Prince de Bearn* v. *Winans*, 111 Md. 434, it was held that the exercise of a general power of appointment did not render the appointed property liable for the donee's debts. In *Humphrey* v.

*Campbell*, 59 S. C. 39, the English rule was not applied. In *Adger* v. *Kirk*, 116 S. C. 298, it was held that the appointed property was not liable for the debts of a donee who had exercised a general power of appointment. In *Commonwealth* v. *Duffield*, 12 Pa. St. 277, the English rule was discredited. In *Dunglinson's Estate*, 201 Pa. 592, the determination of the lower court was approved "that the exercise of a general power of appointment does not, as in England, make the estate assets for payment of debts of appointor." To the same effect are *Terppee's Estate*, 224 Pa. St. 482 and *In re Forney's Estate*, 280 Pa. St. 282.

In reply to the second matter as to which instructions are requested we will say that the complainant should not turn over the trust estate to the executor to be administered by him. Miss Beckwith by the terms of her will did not blend the appointed estate with her own. We will direct that in the circumstances of these cases each of the trust estates should continue to be administered by the complainant by paying from each of said estates all of the expenses of administering the trust and all inheritance or other taxes or dues properly charged against that trust, and then making payment of the remainder of said trust property to the persons and in the amount and shares appointed by the will of Lorania C. Beckwith.

The parties on July 2, 1928, may present a form of decree in accordance with this opinion.

*Tillinghast & Collins, William R. Tillinghast, James C. Collins,* for complainant.

*Herbert A. Rice,* for Edward A. Stockwell, guardian *ad litem.*

*George H. Huddy,* for respondent Joseph S. O'Neill.

*Greenough, Easton & Cross, Harvey S. Reynolds,* for respondents King and Yarnall.

*Gardner, Moss & Haslam, Thomas F. Black, Jr., Edward W. Day,* for respondents Anthony *et al.*